IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 21-430 |
| | ) | |
| DESMOND FODJE BOBGA | ) | |

## **GOVERNMENT'S SENTENCING MEMORANDUM**

AND NOW, comes the United States of America, through its counsel, Cindy K. Chung, United States Attorney for the Western District of Pennsylvania, and Christopher M. Cook, Assistant United States Attorney for said District, and Gustav W. Eyler, Director, and Wei Xiang, Trial Attorney, U.S. Department of Justice, Consumer Protection Branch, and respectfully submits its Sentencing Memorandum.

### A. **Factual Background**

From in and around June 2018, and continuing thereafter until in and around June 2020, in the Western District of Pennsylvania and elsewhere, the Defendant did knowingly and willfully conspire, combine, confederate and agree with other persons known and unknown, to commit an offense against the United States, that is, wire fraud, in violation of Title 18, United States Code, Sections 1349 and 1343.

From Romania and Cameroon, the Defendant and his co-conspirators executed a "puppy scam" against consumer-victims in Pittsburgh and across the United States. The conspirators offered puppies and other animals for sale on internet websites. The Defendant and others communicated by text message and email with victims to induce purchases of puppies and/or other animals. Following each purchase, the Defendant and his co-conspirators claimed that a transportation company would deliver the puppy or other animal and provided a false tracking number for the pet. The Defendant and his co-conspirators, posing as the transportation company,

1

then claimed the pet transport was delayed and that the victim needed to pay additional money for delivery of the pet.

The Defendant and other members of the conspiracy received money directly and indirectly through wire communications from victims who thought they were purchasing pets. After supposed purchases of pets were made, the Defendant and co-conspirators told some victims that they needed to pay more money for delivery because the pet had been exposed to the coronavirus. Some members of the conspiracy used false promises and bogus documents regarding shipping fees and coronavirus exposure to extract successive payments from victims. The Defendant and his co-conspirators never possessed, shipped, or delivered the puppy or other animals that at least 70 victims were fraudulently induced to purchase, with intended loss attributable to the Defendant exceeding $100,000.

The Defendant was charged for this conduct on June 30, 2020, in a 12-count Criminal Complaint. The Defendant waived indictment and pled guilty to the one-count Information charging him with Conspiracy to Commit Wire Fraud.

B. **The Sentencing Guidelines and Restitution**

The Probation Office prepared a Presentence Investigation Report in this case. The advisory sentencing Guideline range, based on an offense level of 16 (with credit for acceptance of responsibility) and a Criminal History Category of I, is 21 to 27 months. For the reasons stated below, the United States requests that the Court impose a sentence at the high end of that range.

The Presentence Investigation Report notes that the statutory maximum term of supervised release is three years, and the United States requests that the Court impose the full three-year term of supervised release. The Defendant recognizes that pleading guilty may have consequences with respect to his immigration status, and that removal proceedings after a guilty plea are

presumptively mandatory. However, no one can predict to a certainty the effect of his conviction on his immigration status. There is no guarantee that the Defendant will be deported subsequent to his conviction in this case. As such, the United States submits that the Defendant should not be granted an exception with regards to a term of supervised release, and requests that the full three-year term be imposed.

Pursuant to 18 U.S.C. § 3663A, restitution shall be ordered in this case. There are multiple victims in this case who have suffered financial loss. In their plea agreement, the parties had calculated the amount of restitution for which the Defendant is liable as a total of $79,030.

### C. The Sentencing Factors at 18 U.S.C. § 3553(a)

The Court is required to thoroughly consider all of the sentencing factors set forth in 18 U.S.C. § 3553(a). Those factors include the following: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

#### 1. A sentence at the high end of the Guidelines range is a sufficient but not greater than necessary sentence for this fraud scheme.

The impact of the Defendant's fraud scheme warrants a sentence at the high end of the Guidelines range. First, the USSG sentence is appropriately calculated. In addition to the

undisputed intended fraud loss of $95,000 to $150,000, specific offense characteristics for the offense involving 10 or more victims (PSR p. 6) and conducting a substantial part of the scheme outside the United States (*Id.*) were accurate increases to the Defendant's base offense level.

Furthermore, the Guidelines in this case are, to a large degree, driven by victim-related considerations and rightly so. The Defendant knowingly exploited the emotional vulnerabilities of his victims. Some victims sought to obtain a puppy to fill the void left by a former beloved pet; some victims wanted to find a companion for their parent, child, or other loved one. The COVID-19 pandemic exacerbated these emotional needs in the later months of the conspiracy. As exemplified in the following excerpted messages between the Defendant and a victim who resided in New Brighton, Pennsylvania (who was referred to as "Victim-1" in the Criminal Complaint and during the Preliminary Hearing conducted on May 21 and June 9, 2021, and who lost thousands of dollars), no lie was beneath the Defendant to spin to fleece these victims:

| Date | Sender | Message |
| --- | --- | --- |
| 3/13/20 | Victim-1 | Have u found out anything yet? |
| 3/13/20 | Defendant | There is some delays There is no direct flight and delivery will be done tomorrow morning with your total refunds ok. |
| 3/14/20 | Victim-1 | What's the news on my puppy? |
| 3/14/20 | Defendant | We are having a situation at the agency , you will need to get a Crate and Vaccine for your puppy. |
| 3/14/20 | Victim-1 | So I have to spend more money before I will be able to get her so wasnt [sic] I told about this yesterday |
| 3/14/20 | Victim-1 | I'm trying to get this dog for my mom since we had to put hers down and this one looks exactly like her. |
| 3/14/20 | Defendant | All you need to do is get a Refundable Crate and Vaccine for your puppy and the fee is 100% refundable upon delivery of your puppy today at your home address. This is to regulate your pups temperature and protect your puppy through out the flight keep your pups temperature stable and also protect your puppy against the Virus |
| 3/14/20 | Defendant | The fee for the Crate and Vaccine is 1100$ refundable upon delivery of your puppy at your home address. Once you able to get that done you will be getting your puppy delivered to you in the next 3hours maximum |

4

| Date | Sender | Message |
|---|---|---|
| 3/14/20 | Victim-1 | [After paying the $1,100] So is this gonna be everything now and my puppy will be delivering [sic] to me |
| 3/14/20 | Defendant | Ok everything is good to go |
| 3/14/20 | Victim-1 | So is everything going ok and my puppy will be delivered |
| 3/14/20 | Defendant | Yes i totally assure you and give you all guarantee |
| 3/14/20 | Victim-1 | Ok great. So is she on the flight now for me to pick up at the Pittsburgh airport |
| 3/14/20 | Defendant | Yes you babies [sic] crate and vaccine has been confirmed there is no direct flight so she took off for Kentucky, where there is a transit and from there to PA. |
| 3/18/20 | Defendant | Your baby is on the way to PA already, once the shippers get to the Airport they will give you updates. Also to confirm when you are available to drive over to your home for the delivery. Â So you will be getting your baby today. |
| 3/18/20 | Victim-1 | I thought I was picking her up at the airport |
| 3/18/20 | Defendant | That won't be the case cause [sic] they will be landing at the Philadelphia International Airport. |
| 3/18/20 | Defendant | 2 cases of Corona Virus where detected upon arrival , cause every flight once it lands is well checked. On the flight on which Pansy was it was detected 2 people have Corona Virus. |
| 3/18/20 | Victim-1 | So in a way I have to pay 1500 so they can check my puppy to see if shes in good health and then there send her or will they still keep her the 10 days |
| 3/18/20 | Defendant | If we can do that they will send her in like 5days she wont spend 10days . Also today the Insurance department will be needing your Bank Info after that to process and send your refunds they will email you |
| 3/18/20 | Victim-1 | Do u have a flight number? That pansy was on |
| 3/18/20 | Defendant | On a follow up to get all details, due to the cases of the Corona Virus on board, i am sorry that information cannot be released ,please do understand . This is because people will spread the information and it can cause serious panic. |
| 3/18/20 | Victim-1 | I just wanted to see if my puppy is actually in philly to make sure cause I do not want to get scammed on |
| 3/18/20 | Defendant | I am a Christian and i have been working here for more than 7 years , i am a dad of 2 and i cannot get my self involved into any scam , my family is build [sic] on the teachings of Jesus Christ and i cannot get myself into something which is not correct. |
| 3/18/20 | Defendant | If we will be able to get the fee so the refunds can be processed tomorrow and you get your baby Friday |
| 3/18/20 | Victim-1 | I dont have the fee to process anything I'm fucken broke |
| 3/18/20 | Defendant | I also to [sic] tell you but it [sic] we do not get this , you wont be able to get your refunds , neither your puppy. [. . .] |

Thus far, the United States has received Victim Impact Statements from 11 of the Defendant's victims. Significant emotional and financial strain to the victims are apparent in their descriptions of the Defendant's crime and its effect on their lives and the lives of their family members. These impact statements are consistent with what numerous other victims have experienced in this case. Therefore, under the §3553 factors, the need for "just punishment" and to reflect the seriousness of the offense weigh as the greatest considerations for this court. The following excerpts from the victim impact statements underscore the need for a sentence at the high end of the Guidelines:

J.A., a 72-year old victim in Rhode Island ($1,438 loss), see generally, **Exhibit A**

"*It took money I had saved for a long time.*"

"*I was so Disappointed I would never receive the puppy. I cryed [sic] when he told me it got sick.*"

L.M.F., a victim in Iowa ($1,797 loss), see generally, **Exhibit B**

"*Kids suffered emotional trauma thinking they were getting this dog, then the dog got sick with no one to care for it.*"

The Defendant's victims have suffered greatly, not only from being defrauded of their money by the Defendant and his co-conspirators, but also from being concerned for sick puppies that, unbeknownst to them, never existed. While other § 3553 factors are relevant, the need for just punishment is the overriding reason for a sentence at the high end of the Guideline range. The sentence should appropriately reflect the scope of the Defendant's exploitation of his victims.

A sentence at the high end of the Guideline range is also needed "to afford adequate deterrence to criminal conduct" by others who might engage in such a crime. 18 U.S.C. § 3553(a)(2)(B). Puppy scams are not unique to the Defendant's conspiracy. Although high in

emotional trauma to victims, they are often lower in individual economic loss compared to romance scams and other fraud schemes. When combined with the national or transnational nature of such organized crime, puppy scams become challenging, if not impossible, for most resource-stretched law enforcement authorities to combat. Exploiting emotionally vulnerable victims in this manner must therefore be met with stern sentences to deter other would-be perpetrators.

Additionally, imposition of a sentence within the advisory Guideline range best serves "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Congress sought uniformity in sentencing by narrowing the wide disparity in sentences imposed by different federal courts for similar criminal conduct prior to the Guidelines. Since uniformity remains an important goal of sentencing, § 3553(a)(6) directs district courts to consider the need to avoid unwarranted disparities.

The government has found only one federal sentence for puppy scams. In *United States v. Fonjeck Eric Azoh*, 1:21-cr-412-CJN (D.D.C.), that defendant, like the Defendant, was initially charged by criminal complaint with multiple offenses, including wire fraud and conspiracy to commit wire fraud, for his role in a puppy scam that spanned 2019 and 2020. (*Azoh* Dkt. 1). Azoh then waived indictment and pleaded guilty to a one-count information charging one count of wire fraud. (*Azoh* Dkt. 34). Based on an agreed-upon loss of $158,000, Azoh had a total offense level that was two levels higher than the Defendant's. (*Azoh* Dkt. 36). Combined with a Criminal History Category of I, Azoh had a Guidelines range of 27 to 33 months. (*Azoh* Dkt. 44). The district court sentenced Azoh to a term of imprisonment of 30 months. (*Azoh* Dkt. 50). A term of imprisonment of 27 months for the Defendant would be consistent with that given to Azoh.

## 2. The Defendant does not deserve a downward variance or departure from the Guidelines range.

In his plea agreement, the Defendant reserved the right to request a downward variance from the Guidelines ranges. Whether or not he requests such a variance, no sentence below the advisory Guidelines range is merited here, for the reasons discussed above.

Furthermore, the Defendant has requested the Court to not impose any term of supervised release, citing the recommendation of USSG § 5D1.1(c) for deportable aliens who likely will be deported after imprisonment. The Court should decline such request. Travel and other restrictions relating to COVID-19 still exist globally, and are difficult to predict for even the foreseeable future. Thus, whether the Defendant will be successfully removed from the United States immediately following his imprisonment here is not a foregone conclusion.

WHEREFORE, for the reasons set for above, the Court should sentence the Defendant to a term of imprisonment of 27 months, followed by a three-year term of supervised release.

Respectfully submitted,

CINDY K. CHUNG
United States Attorney

*Christopher M. Cook*
CHRISTOPHER M. COOK
Assistant United States Attorney
700 Grant Street, Suite 4000
Pittsburgh, Pennsylvania 15219
KS ID No. 23860

GUSTAV W. EYLER
Director

*Wei Xiang*
WEI XIANG
Trial Attorney
Consumer Protection Branch
U.S. Department of Justice
450 Fifth Street NW, Suite 6400
Washington, DC 20001
FL ID No. 85604